David R. Paoli
Paul M. Leisher
PAOLI LAW FIRM, P.C.
257 W. Front, Suite A
Missoula, MT 59802
Telephone: 406-542-3330
Facsimile: 406-542-3332
paulleisher@paoli-law.com
*Attorneys for Plaintiff*

FILED MAR 2 1 2018
SHIRLEY A FAUST Clerk
By _____ Deputy

## MONTANA FOURTH JUDICIAL DISTRICT COURT
## MISSOULA COUNTY

| | |
|---|---|
| MARCY JANE KROSCHEL,<br><br>Plaintiff,<br><br>vs<br><br>MID-CENTURY INSURANCE COMPANY, a member company of FARMERS INSURANCE GROUP OF COMPANIES,<br><br>Defendant. | Civil No. DV-18-341<br>DEPT. 4<br>Karen S. Townsend<br><br>**COMPLAINT** |

COMES NOW, Marcy J. Kroschel, through her attorney of record, and for her cause of action, alleges and states as follows:

ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

1.  Jurisdiction and venue are proper.

2.  Plaintiff Marcy Kroschel ("Kroschel") is currently a resident of Beaverton, Oregon. Ms. Kroschel was previously a resident of Missoula, Montana.

3.  Defendant Mid-Century Insurance Company ("Mid-Century") is a foreign, for-profit insurance company licensed to do business in Montana. Mid-Century is organized under the laws of California with its principal place of business located in Woodland Hills, California. Its agent for service of process is Doren E Hohl, 6301 Owensmouth Ave, Woodland Hills, CA 91367.

4.  Mid-Century Insurance is a member company of the Farmers Insurance Group of Companies ("Farmers").[1]

5.  In late November 2016, Kroschel sold her car.

6.  Kroschel's co-worker, Elizabeth Anderson ("Anderson") was selling a 2004 Subaru Outback, that was owned by a family trust, the Anderson Revocable Trust. Kroschel discussed buying the car with Anderson.

7.  On November 29, 2016, Anderson dropped the car off at Kroschel's house, so Kroschel could test drive it and have it inspected, and Kroschel gave Anderson $500 as a security deposit or earnest money.

8.  Kroschel was interested in buying the car, but her interest was contingent on the results of a mechanical inspection, and Kroschel made that clear to Anderson. Kroschel had the bodywork inspected at Rick's Auto Body and negotiated with Anderson for a reduction in the sale price based on damage to the front bumper and

---

[1] Because Mid-Century often communicates under the name "Farmers Insurance," the names "Mid-Century" and "Farmers" are used interchangeably throughout this Complaint. All refer to Mid-Century, however.

COMPLAINT 2

windshield. Kroschel checked with several mechanics, but the earliest appointment for a mechanical inspection she could get was approximately two weeks out.

9. Over the next several days, Kroschel and Anderson exchanged texts discussing a sale price and Anderson's efforts to retrieve the title from California. On December 8 or 9, 2016, Anderson received the title.

10. On December 10, 2016, prior to any mechanical inspection, prior to a final price being agreed on, and prior to any transfer of title, Kroschel was involved in an accident and was cited for driving under the influence.

11. The Subaru was insured under liability Policy No. 18955-21-86 issued by Farmers Insurance ("the policy") to the Anderson Revocable Trust.

12. The policy's section on liability coverage promises:

> We will pay damages for which any **insured person** is legally liable because of bodily injury to any person and property damage arising out of the ownership, maintenance or use of a private passenger car, a utility car, or a utility trailer. We will defend any claim or suit asking for these damages.

13. The policy further defines **insured person** as: "Any person using **your insured car.**" The Subaru was an insured car under policy.

14. Kroschel was, hence, an "insured person" under the policy.

15. The other driver in the accident, Susan Cundiff, filed a claim with Farmers on the same day as the accident.

16.  Between December 10 and December 15, 2016, Kroschel and Anderson exchanged texts in which Anderson sought to effectuate the sale and avoid any possibility the accident would be covered under her insurance.

17.  On December 15, 2016, Kroschel returned the car to Anderson's residence together with $250—which, with the $500 security deposit/earnest money previously given to Kroschel, accounted for the $750 deductible for Anderson's collision coverage.

18.  On January 11, 2017, Farmers sent a letter to Cundiff telling her the policy did not provide coverage.

19.  On the same day, Farmers sent a letter to Kroschel declining coverage based on this language in the policy:

> Exclusions
> This coverage does not apply to:
>
>> 14. Bodily injury or property damage arising out of the ownership, maintenance, or use by any person of a vehicle in which you have transferred full ownership interest but the transfer does not comply with the vehicle transfer of ownership provisions of the state motor vehicle law.

20.  Farmers stated the following as its position regarding the application of the exclusion:

> It is our understanding that on the above date of loss, the described 2004 Subaru Legacy was involved in an automobile accident with a 2010 Honda CRV driven by Susan Cundiff. The police identified you as the driver of the 2004 Snbaru Legacy. Ms. Anderson reported that the 2004 Subaru was sold to you on December 5, 2016. Ms. Anderson

COMPLAINT                                                                                          4

provided a bill of sale confirming she sold the vehicle to you for $2100.00. The bill of sale was signed by the seller to you. Finally, Ms. Anderson indicated that she had to send away for the title as it was held by the trustee of the Estate in California. Ms. Anderson did receive the signed title on Monday, December 5, 2016 and attempted to contact you to complete the paper work. Ms. Anderson confirms that when she provided you the vehicle on November 30, 2016 that she did not remove the license plates from the 2004 Subaru Legacy, and did not cancel the insurance coverage for the 2004 Subaru Legacy.

Our investigation indicates the Montana Code and the Montana DMV have specific requirements when a vehicle is sold/transferred to another party. When a vehicle is sold to another party/person in Montana the owner needs to sign over the title to the new owner, remove the license plates and the new owner has 40 calendar days from the purchase date to make application for certificate of title. Again, Ms. Anderson confirmed the license plates were not removed when you took possession of the vehicle on November 30, 2016. Information on the Montana Code Annotated can be located in Montana Code 61-3-317 and 61-3-334.

...

Based on the facts obtained in the course of our investigation, we have determined there is not coverage for any of the damages arising out of the December 10, 2016 accident. Specifically, coverage is disclaimed because the 2004 Subaru Legacy was sold by Ms. Anderson to you on December 5, 2016 and the transfer of ownership did not comply with Montana Code and DMV requirements for the transfer of ownership (Exclusion # 14). Accordingly, Liability coverage is not afforded and herby disclaimed.

21. Farmers position regarding the relevant facts and law is erroneous in several respects:

COMPLAINT 5

a. The bill of sale provided by Anderson dated December 5, 2016, was not signed by Kroschel and, therefore, could not effectively transfer ownership to Kroschel;

b. Section 61-3-334's requirement that an owner immediately remove the license plates upon the transfer of ownership has no legal effect on any transfer of ownership—i.e., a seller's failure to remove the license plates does not mean the "transfer does not comply with the vehicle transfer of ownership provisions of the state motor vehicle law";

c. The alleged date of transfer of ownership, December 5, 2016, was long before the 40-day period in which a new owner must apply for a certificate of title and pay registration fees under § 61-3-317, MCA.

22. Accordingly, Farmers had no reasonable basis in law or in fact to decide that Anderson had transferred full ownership interest in the Subaru to Kroschel, or that any transfer failed to comply with the vehicle transfer of ownership provisions of Montana's motor vehicle laws.

23. After Cundiff received the January 11, 2017 letter from Farmers stating that there was no coverage, she gave the letter to the Missoula Police Department officer who investigated the crash, Officer Devin Erickson.

24. On January 14, 2017, Officer Erickson sent an email to the Farmers claims adjuster handling Cundiff's claim saying:

> The victim in this matter, Susan Cundiff, recently received a "Claim Outcome Letter" from you in which states that the insurance was no longer valid due to the vehicle no longer being the property of the insured party. If this is true, then I can proceed with the process of charging the driver for being uninsured and request restitution for Susan via the Court. Before I can do that, however, I would request to receive a copy of the Bill of Sale dated before the accident so that I have sufficient proof of the legitimacy of the violation and establish probable cause for the offense. Again, I contacted Farmers directly and was explicitly told that the insurance was valid at 0100 hrs. on 12/10/2016. I would simply request the documentation to prove this to be false.

25. On January 18, 2017, Farmers responded to Officer Erickson's email:

> The policy was in force, however, Ms. Croschel [sic] had made arrangements to purchase the vehicle, she had the vehicle in her possession and had already made the down payment for the vehicle as well as made arrangements to obtain the title etc.
>
> There are specific exclusions to our policy which apply to these issues. Attached is a copy of the letter to Ms. Cundiff confirming there is no coverage under our policy.

26. Farmers did not provide Officer Erickson with the requested copy of the bill of sale dated before the accident.

27. Based on Farmers representations to Officer Erickson, on January 28, 2017, the City of Missoula charged Kroschel with two misdemeanors: driving without liability insurance and failure to remove plates from a transferred vehicle.

28. Kroschel suffered significant emotional distress as a result of Farmers erroneous representation to Officer Erickson that Kroschel had committed the crime of driving without liability coverage and the resulting criminal charges.

29. On March 28, 2017, Kroschel's attorney sent Farmers a letter noting that Farmers had determined there had been a transfer of ownership based solely on the representations of Anderson and a bill of sale signed only by Anderson, noting that Farmers had made no attempt to talk to Kroschel or otherwise investigate the matter, and demanding that Farmers immediately provide coverage.

30. On June 12, 2017, Farmers sent a letter to Kroschel's attorney saying that Farmers was still reviewing its prior coverage opinion.

31. On August 22, 2017, Kroschel was sentenced for operating a motor vehicle with a blood alcohol concentration in excess of .08. As a part of her sentence, she was ordered to pay $12,765.52 to Susan Cundiff in restitution for damages arising from the December 10, 2017 auto accident. The prosecution dismissed the charges for driving without liability insurance and failure to remove plates from a transferred vehicle after determining that Kroschel had not, in fact, purchased the Subaru from Anderson.

32. On July 21 and September 13, 2017, coverage counsel for Farmers, Nicholas Pagnotta, sent letters to Kroschel's counsel stating that additional information was needed to determine whether Kroschel would qualify for coverage under the policy and requesting an examination under oath of Kroschel.

33. Pagnotta conducted an examination under oath of Kroschel on November 9, 2017. Pagnotta stated at the conclusion of the examination that a review of the denial of coverage would be forthcoming.

34. As of the date of this Complaint, no such review has been made.

35. At some point after the accident, Anderson renewed the registration on the Subaru.

## COUNT I – REQUEST FOR DECLARATORY JUDGEMENT

36. The preceding paragraphs are incorporated by reference.

37. Count I is made pursuant to Montana's Declaratory Judgment Act, MCA 27-8-201 *et. seq.*

38. At the time of the subject accident, Anderson's Subaru was insured under a policy issued by Defendant Mid-Century Insurance Company. The policy provided coverage for the December 10, 2016 auto accident arising out of the use of the Subaru.

39. The exclusion upon which Farmers relied in denying coverage is inapplicable.

40. Kroschel seeks all remedies to which she is entitled, including a declaration that the policy provides coverage for the December 10, 2016 accident and an order of the Court compelling Mid-Century to pay all damages arising from the accident for which Kroschel is liable, as well as an award of attorney fees for being

compelled by Mid-Century to bring this action.

## COUNT II – VIOLATION OF MUTPA

41. The preceding paragraphs are incorporated by reference.

42. Mid-Century denied coverage without conducting a reasonable investigation based upon all available information. Mid-Century's post-denial, year-long (and still ongoing) "investigation" of information that was available to it before its denial—e.g., taking a statement under oath from Kroschel—makes this evident.

43. As a direct and proximate result of Mid-Century's bad faith, Kroschel has incurred damages in the form of a judgment against her for over $12,000 in restitution, associated costs, and mental and emotional suffering.

## ALLEGATIONS RELEVANT TO PUNITIVE DAMAGES

44. The preceding paragraphs are incorporated by reference.

45. Defendant's acts and omissions were committed with actual fraud in that Defendants made representations with knowledge of their falsity and concealed facts for the purpose of depriving Kroschel of property or legal rights, such as coverage under the policy.

46. Defendant's acts and omissions were committed with actual malice in that they disregarded facts that created a high probability of injury to Kroschel and proceeded to act in conscious or intentional disregard or indifference to the high probability of injury to Kroschel.

47. Defendant Mid-Century is accordingly subject to punitive damages.

## ALLEGATIONS RELEVANT TO ATTORNEYS FEES

48. The preceding paragraphs are incorporated by reference.

49. Demand has been made on Defendant Mid-Century for coverage under the liability policy, and Defendant has denied coverage.

50. Defendant's denial of coverage forced Kroschel to secure counsel and file suit to compel Defendant Mid-Century to make the payments for damages arising from the accident for which Kroschel has been held liable.

51. Kroschel is entitled to an award of attorneys' fees under the insurance exception to the American rule because the insurer, Mid-Century, has forced the insured to assume the burden of legal action to obtain the full benefit of the insurance contract.

WHEREFORE, Plaintiff respectfully prays for relief as follows:

1. For a declaratory judgement stating that the policy provides liability coverage to Kroschel for the December 10, 2016 accident;

2. For compensatory damages for the amounts for which Kroschel was found liable, and for mental and emotional suffering;

3. For punitive damages;

4. For pre- and post-judgment interest;

5. For costs and attorney fees;

6. For such additional relief as the Court deems appropriate and just.

DATED this 21st day of March, 2018.

PAOLI LAW FIRM, P.C.

_____
PAUL M. LEISHER

## DEMAND FOR JURY TRIAL

Marcy Kroschel, Plaintiff herein, demands a jury trial on all issues in the above-entitled action.

DATED this 21st day of March, 2018.

PAOLI LAW FIRM, P.C.

_____
PAUL M. LEISHER

COMPLAINT